William V. DAVIDSON, an infant, who sues by his mother and next friend, Juliana Davidson, Appellant,

v.

John DAVERN, Almyra Davern and Vincent S. Hargadon, Administrator of the Estate of Michael Davern, Deceased, Appellees.

Court of Appeals of Kentucky.

Oct. 30, 1964.

Rehearing Denied Dec. 18, 1964.

Michael M. Hellmann, Herman E. Frick, Louisville, for appellant.

Edward J. Hogan, Paul L. Humphrey, Louisville, for appellees.

STEWART, Judge.

This is an appeal from a judgment for defendants-appellees entered in the Jefferson Circuit Court pursuant to the verdict of the jury. The issue to be determined is whether plaintiff-appellant, a passenger in an automobile involved in an accident, was entitled to a directed verdict as to his claim for damages.

The trial court instructed the jury that the driver of the automobile, Michael Davern, was negligent on the occasion and directed that they find damages in behalf of appellant, William V. Davidson, not to exceed $52,011.04, unless they believed appellant failed to exercise ordinary care for his own safety.

On July 30, 1961, in the afternoon, Michael Davern, a boy sixteen years of age, was driving the Chevrolet automobile of his parents eastwardly on Watterson Expressway in Jefferson County, accompanied by appellant, William V. Davidson, seventeen years of age, and two other teen-age friends, Michael J. Horan, Jr., and Patrick John Duncan. Horan's family was having a picnic at Silver Springs, located a short distance from Louisville in Indiana, which the boys wished to attend.

Horan was in the front seat to the right of Davern; Davidson was sitting in the back seat on the left-hand side and Duncan was on his right. While traveling at an excessive rate of speed immediately before

the accident, and after skidding 141 feet, the car left the road, climbed a rather steep embankment and struck an abutment at the Newburg Road overpass. The car was demolished, Davern, the driver, was killed, and Davidson was severely injured.

Davidson instituted this action by his next friend against the parents of Davern and against the estate of the deceased boy.

The boys had been playing poker before starting out, and cards and some small change were found scattered in the front and back seats of the car when it was examined after the wreck. Duncan testified Horan was passing the hands back and forth to the occupants of the back seat. The evidence indicates the driver was not playing, and all of the three passengers in the car testified the game had stopped before they entered the Watterson Expressway.

A summary of the evidence of Davidson, Horan and Duncan is that, after they had assembled for the trip they had planned, they started out in the Davern automobile, and proceeded onto the Watterson Expressway from Preston Street. From the point where they entered the expressway until about one-fourth of a mile west of the site of the collision, according to their testimony, the car was operated by Davern in a proper manner. Davidson stated: "He was just driving along normal, like everybody else." Horan said: "Until the time he went around the car (the John Barnes automobile) he was driving about 45 or 50 miles an hour." Duncan, unable to estimate accurately the speed of the car, testified: "I just know he wasn't speeding."

It was when the car caught up with and began to go around an automobile driven by one John Barnes that its speed was accelerated. Barnes stated he noticed the Davern car in his rearview mirror just before it overtook him. He testified it was traveling at a rapid rate of speed and, as it went by him, it was in his opinion going from 75 to 80 miles per hour. He said it "bore" over into part of his lane, then back onto its own side, passed another car in front of him, swerved again, and finally headed into the abutment with undiminished speed. He estimated the distance from the position on the highway where he first saw it to the location where it plowed into the abutment to be about a quarter of a mile.

The testimony of Davidson, Horan and Duncan points up the fact that the Davern boy was not exceeding the speed limit or driving in any respect recklessly until he attempted to pass the car driven by Barnes. Horan made this statement in this connection: "Well, he wasn't driving bad until he went around the (Barnes) car, and there wasn't any reason to; and when he went around the car he went pretty fast, and it (the Davern car) had done started shaking, and somebody might have started hollering to slow down or ease off." Horan also testified that after passing the Barnes car, and while the Davern car was still "shaking," he told Davern to hit the brake easy and slow down. He said it was then too late; the car was going too fast.

An officer of the Louisville Police Department who investigated the wreck testified Duncan told him "they were playing around with the car." The officer added that no explanation was given as to what was implied by this statement. When Duncan was interrogated on this matter he insisted what he meant was that the radio was on and he was tapping on the dashboard.

■■ Indubitably guests riding in automobiles can be guilty of contributory negligence so as to defeat their claims against negligent operators. Negligence of this type may be committed or demonstrated in a variety of ways. One such way is knowingly continuing to ride, without protest, in an automobile which is being operated recklessly, Donnell v. Pruitt, Ky., 265 S.W.2d 784; another is participating in the control of the vehicle so that the

negligence of the driver would be imputed to the guest, Carnation Company v. Devore, Ky., 252 S.W.2d 860.

■ However, in Southern Oxygen Company v. Martin, 291 Ky. 238, 163 S.W. 2d 459, it was held that a contributory negligence instruction is properly refused as to a passenger when: "There is no evidence of improper or careless driving * * * at any time *before* the accident which would put the other occupants on notice that the car was being negligently operated." (Emphasis added.)

In Beasley v. Evans' Admx., Ky., 311 S. W.2d 195, which was an action for damages growing out of the death of an automobile guest in a collision between an automobile and an oncoming truck, it was ruled an instruction as to contributory negligence upon the part of the guest was unjustified in the absence of evidence that the driver of the automobile had been driving recklessly or negligently *before* collision or that the guest had complained about manner in which he had been driving."

In this same case, it is interesting to note that the passenger immediately prior to the accident, and when the accident was imminent, cautioned the driver with the words, "Watch it." Analogously, in this case, the driver, Davern, after he had passed the first or the Barnes car, and while his car was still shaking, was given a precautionary warning by Horan.

■ The most that can be consistently drawn from all the testimony in this case is that Davern, the driver, was proceeding properly until he undertook to move ahead of the Barnes car. The accident was occasioned because he then accelerated too rapidly and, in consequence, lost control of the car. Thus, there is no evidence of probative value of any act of recklessness *prior* to the fatal impact which would have placed upon Davidson the duty to warn or admonish the driver. It is not even contended that Davidson attempted to exercise any control over the vehicle so that the negligence of Davern could be imputed to him.

■ Appellees strongly argue, in order to uphold the giving of the contributory negligence instruction, that Davern, who was only 16 years of age at the time of the mishap, was an inexperienced driver. It is true, as shown by the record, he had obtained his operator's license only a week or ten days before the accident that resulted in his death. However, to state unequivocally that he was inexperienced, for this reason alone, is an unwarranted assumption. On the other hand, at no place in the record is there any proof that he was unable to operate properly an automobile on a public highway.

KRS 186.480(1), which relates to the test an applicant must successfully pass in order to obtain an operator's license, requires, among other things, "an actual demonstration of ability to exercise ordinary and reasonable control in the operation of a motor vehicle." Since Davern had demonstrated his ability to exercise ordinary and reasonable control in the operation of a motor vehicle to the satisfaction of the State Police, who examined him a week or ten days before he received his license, it is difficult to see how one can assume that shortly thereafter he could be considered an inept driver. As there is no evidence on the point, we must reject the idea that appellant believed, or it was brought home to him, that Davern was inexperienced at the time he rode with him.

■ We conclude appellees in this case failed to meet the burden of proving the elements that would warrant the giving of a contributory negligence instruction as to appellant.

Wherefore, the judgment is reversed and the case is remanded with directions that the trial court allow the jury to determine only the amount of appellant's damages.